IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ISRAEL VARGAS CEJA,

    Petitioner,                    No. CIV S-03-2113 LKK JFM P

    vs.

DAVE RUNNELS, Warden, et al.,,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2000 conviction on charges of engaging in three or more acts of lewd conduct upon a child under fourteen years of age, twenty counts of forcible rape, one count of assault with a firearm, one felony count of abusing or endangering the health of a child, with personal use of a firearm, and two misdemeanor counts of abusing and endangering the health of a child. Petitioner was sentenced to one hundred thirty-nine years in state prison. (CT 524.) Petitioner raises two claims in his petition, filed October 7, 2003, that his prison sentence violates the Constitution.

/////

/////

1

FACTS[1]

Monica E.G.C. met [petitioner] while she was working as a prostitute. They later became boyfriend and girlfriend and began to live together in 1992 with her two sons. Monica married [petitioner] in 1997.

The victim R., was Monica's child and was born in 1983. She had been temporarily removed from Monica's custody because of a prior incident of molestation by Monica's former fiancée. The victim was reunited with Monica.

During the time Monica, [petitioner], the victim and her brothers lived together, [petitioner] bathed the children. At the time, the victim was eight years old, and her brothers were four and three. When [petitioner] bathed the victim, he would wash her vagina with his fingers and took longer in that area than necessary. This made the victim uncomfortable. She would pull away, and [petitioner] would tell her it was "okay" and he was not doing anything wrong. After about eight months, Monica asked [petitioner] to stop bathing the children because the victim told her mother the victim felt uncomfortable with [petitioner] bathing her and the victim did not want him to do it anymore. [Petitioner] complied with her request.

In 1994, Monica was hospitalized for two weeks. During the time she was in the hospital, the [petitioner] took care of the children. During this period, [petitioner] asked the victim to help him find something on the top shelf of a closet. [Petitioner] lifted the victim up high to look for about a minute and a half. After she said she could not find the object, [petitioner] put the victim on the ground and climbed on top of her. [Petitioner] touched the victim all over (including her vaginal area) and was moving on the victim like they were having intercourse.

We omit the facts of [petitioner's] remaining crimes as they are not relevant to the issues on appeal. Generally, [petitioner] forced the victim to have sexual intercourse with him after she turned 14. [Petitioner] impregnated the victim and tried to get her to miscarry by forcing her to jump off a truck ramp to induce a miscarriage (after she rejected his request that she jump off the roof). The other charges arise out of an altercation during which [petitioner] pulled out a gun and tried to shoot the victim in front of her younger brothers.

When he was arrested, [petitioner] admitted to police officers he

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Ceja, No. C036920 (April 15, 2002), a copy of which is attached as Exhibit C to Respondent's Answer, filed March 4, 2004.

>had sex with the victim. [Petitioner] also admitted he had touched the victim's vagina while he was washing her in the bath.
>
>At trial, [petitioner] denied he picked up the victim to look in his closet, or laid down on top of her afterwards. He admitted he washed the victim's private parts with his bare hand. He also admitted to having had sex with the victim in February 1999. He claimed this was the first time they ever had sex and denied forcing the victim to have sex. He claimed to have had sex with the victim a total of five to ten times. The [petitioner] denied pulling a gun on the victim.

(People v. Ceja, slip op. at 2-4.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ

simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. Petitioner's Claims

A. Claim One

Petitioner's first claim is that he was denied a fair trial because the trial court used CALJIC No. 17.41.1.[2]

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim as follows:

> Even assuming for the sake of argument that giving CALJIC No. 17.41.1 is federal constitutional error, it is not reversible per se; rather, it is subject to harmless error analysis under the standard of *Chapman v. California* (1967) 386 U.S. 18. (*People v. Molina* (2000) 82 Cal.App.4th 1329, 1335-1336 (review den. Nov. 29, 2000, S091788) (*Molina*).)
>
> There is nothing in this record indicating [petitioner] was prejudiced by the giving of CALJIC No. 17.41.1. In this case, as in *Molina*, the jury deliberated only briefly. In *Molina*, deliberations lasted less than an hour. (*Molina, supra*, 82 Cal.App.4th at p. 1336.) Here, after a trial during which three days of testimony was presented, and in which the jury was asked to consider 28 counts, the jury deliberated for a little longer than a day – from sometime after 1:20 p.m. until the end of the day on September 27, all day September 28 and returned unanimous verdicts on all the charges

---

[2] "The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any other improper basis, it is the obligation of other jurors to immediately advise the court of the situation.

4

>at 10:15 a.m. on September 29.  None of the communications from the jury to the court suggested a problem related to this jury instruction.  The jury sent no notes or questions to the court indicating deadlock, holdout jurors, or problems of any kind in deliberations.  The record thus discloses no problems in the jury's deliberations.
>
>"We will not infer that the jury instruction had any impact prejudicing [petitioner]."  We reject [petitioner's] speculative assumption that the instruction had a chilling effect on the jurors' deliberations, inhibiting the kind of free expression and interaction among jurors that is so important to the deliberative process.  There is no warrant for that view on this record." (*Molina*, *supra*, 82 Cal.4th at p. 1336.)  Similarly, here, even assuming for the sake of argument that instructing the jury with CALJIC No. 17.41.1 was error, the error was harmless beyond a reasonable doubt.

(People v. Ceja, slip op. at 9-10.)

In Brewer v. Hall, 378 F.3d 952, 956 (9th Cir. 2004), the United States Court of Appeals for the Ninth Circuit held that there is no decision of the United States Supreme Court establishing "that an instruction such as CALJIC 17.41.1 violates an existing constitutional right."  Petitioner's claim is foreclosed by the decision in Brewer and should be denied

    B.  Second Claim

Petitioner's second claim is that because the trial court refused to give a pinpoint jury instruction on the theory of non-offensive touching, he was denied his right to a jury trial and due process.  Petitioner requested the following pinpoint jury instruction:

>Whether the touching alleged in Counts 1 through 4, inclusive, is lewd or lascivious and 'lewdly' performed depends upon the sexual motivation and intent with which it is committed.  Inadvertent or casual non-offensive touching that is unaccompanied by direct or circumstantial evidence of an intent to arouse, appeal to, or gratify either the lusts, passions or sexual desires of the [petitioner] or the child are insufficient to qualify as a lewd and lascivious touching.  If you have a reasonable doubt as to whether Counts 1 through 4, inclusive, were committed with the required sexual motivation and intent, you must resolve that doubt in favor of the [petitioner] and return a verdict of not guilty."

(People v. Ceja, slip op. at 4-5.)

/////

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim as follows:

> The trial court has a duty to instruct on the general principles of law relevant to the issues raised by the evidence. (*People v. Earp* (1999) 20 Cal.4th 826, 885.) Upon request, a trial court must give jury instructions that pinpoint the theory of the defense. (*Id.* at p. 886.) However, a trial court need not give special instructions, even if legally correct, if they are duplicative of other properly given instructions. (*Id.* at p. 901; *People v. Jones* (1998) 17 Cal.4th 279, 314.)
>
> Here, the court properly instructed the jury with CALJIC Nos. 2.90, 3.31, and 10.42.6 which fully advised the jury as to the issues contained in [petitioner's] proposed instruction.
>
> As given by the trial court, CALJIC No. 2.90 provides: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows: It is not a mere possible doubt because everything relating to human affairs is open to some possible or imaginary doubt. Reasonable doubt is that state of the case, which after the entire . . . comparison and consideration of all the evidence leaves the minds of the jurors in that condition they cannot say they feel an abiding conviction of the truth of the charge."
>
> The court also read the jury CALJIC No. 3.31 as follows: "In the crimes charged in Court One, engaging in three or more acts of lewd of [sic] lascivious conduct upon a child under 14, . . . , there must exist a union or joint operation of act or conduct along with a certain specific intent in the mind of the perpetrator. Unless this specific intent exists, the crime to which it relates is not committed. [¶] The specific intent required is included in the definitions of the crimes, and I'll get to those in just a moment."
>
> Finally, the court read CALJIC No. 10.42.6 to the jury: "Mr. Ceja is accused in Count One of the crime of continuous sexual abuse of a child in violation of [section] 288.5, subdivision (a) of the Penal Code. [¶] Every person who either resides in the same home with a minor child or has recurring access to a child, who over a period of time, not less than three months in duration, engages in three or more acts of lewd or lascivious conduct with a child under the age of 14 years at the time of the commission of the offense is guilty of the crime of continuous sexual abuse of a child, which is a

    violation of Section 288.5.  [¶]  A 'lewd or lascivious act' means any touching of the body of a child under the age of 14 with a specific intent to arouse, appeal to, or gratify the sexual desires of either party.  To constitute a lewd or lascivious act, it is not necessary that the bare skin be touched.  The touching may be through the clothing of the child.  [¶]  The law does not require that the lust, passions, or sexual desires of either such persons be actually aroused, appealed to, or gratified.  It is no defense to this charge that the child under the age of 14 years may have consented to the lewd or lascivious conduct.  [¶]  In order to prove this crime, each of the following elements must be proved:  [¶]  1. A person was a resident in the same house with a minor child; and [¶]  2. That person over a period of time, not less than three months in duration, engaged in three or more acts of lewd or lascivious conduct with the child under the age of 14 years at the time of the commission of the lewd conduct.  [¶]  Evidence has been introduced for the purpose of showing that there are more than three acts of lewd or lascivious conduct upon which a conviction in Count One may be based.  [Petitioner] may be found guilty if the proof shows beyond a reasonable doubt and you unanimously agree that the [petitioner] committed three of these acts.  It is not necessary that you unanimously agree on which acts constitute the required number."

    Taken together, these instructions given completely covered the ground of the proposed pinpoint instruction.  These instructions informed the jury the lewd and lascivious conduct required a simultaneous "specific intent to arouse, appeal to, or gratify the sexual desires of either party."  These instructions listed each of the elements of the crime and placed the burden of proof for all of the elements of the crime on the prosecution and required proof of each element, including the intent element, beyond a reasonable doubt.  If the jury had a reasonable doubt as to any element it was required to find the [petitioner] not guilty.  The court was not required to give [petitioner's] proposed duplicative instructions.

(People v. Ceja, slip op. at 5-8.)

    In general, a challenge to jury instructions does not state a federal constitutional claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment."  Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail on such a claim

1  petitioner must demonstrate that the "ailing instruction . . . so infected the entire trial that the
2  resulting conviction violates due process.'"  Middleton v. McNeil, 541 U.S. 433, 437 (2004)
3  (quoting Estelle v. McGuire, 502 U.S. 62, 72 (1991)).  In making its determination, this court
4  must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as
5  a component of the entire trial process.'"  Prantil, 843 F. 2d at 317 (quoting Bashor v. Risley, 730
6  F.2d 1228, 1239 (9th Cir. 1984)).  See also Middleton, 541 U.S. at 437.  Where, as here, the
7  challenge is to a refusal or failure to give an instruction, the petitioner's burden is "especially
8  heavy," because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than
9  a misstatement of the law."  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).  See also Villafuerte
10 v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

11         Petitioner has failed to sustain his "heavy burden" of demonstrating a miscarriage
12 of justice based upon the trial court's failure to give the requested pinpoint instruction.  The state
13 court found that the trial court properly instructed the jury with CALJIC Nos. 2.90, 3.31 and
14 10.42.6 which fully advised the jury of the elements of the crimes, including those pinpointed by
15 petitioner's proposed instruction.  That state court ruling was neither contrary to nor an
16 unreasonable application of Supreme Court authority.  Moreover, a review of the record reflects
17 that petitioner's trial counsel was able to fully develop petitioner's theory of the defense that the
18 prosecution must find petitioner had the specific intent to arouse, appeal to, or gratify the sexual
19 desires of either party.  Counsel argued this theory extensively to the jury in his closing
20 argument.  (RT at 827-34; 836.)  CALJIC Instruction Nos. 2.90, 3.31, and 10.42.6, along with the
21 evidence produced at trial, provided a basis for petitioner to argue that the prosecution failed to
22 prove specific intent.  The lack of a pinpoint instruction did not prevent petitioner from
23 presenting his theory of defense or otherwise render petitioner's trial fundamentally unfair.
24 Accordingly, petitioner is not entitled to relief on this claim.

25         For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's
26 application for a writ of habeas corpus be denied.

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9  DATED: May 17, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

001;ceja2113.157